UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMION NEVILLS, JR.,

                     Plaintiff,            Civil Action No. 18-cv-12200
                                            Honorable Arthur J. Tarnow
v.                                        Magistrate Judge David R. Grand

JONATHAN HILDRETH,

                     Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART WITHOUT PREJUDICE DEFENDANT JONATHAN HILDRETH'S MOTION FOR SUMMARY JUDGMENT [12]

This is a prisoner civil rights case brought by *pro se* plaintiff Damion Nevills, Jr. ("Nevills") against Jonathan Hildreth ("Hildreth") a corrections officer in the Michigan Department of Corrections ("MDOC"). Nevills alleges that on February 13, 2018, Hildreth accused Nevills of raping an unspecified woman, called Nevills a name ("cho")[1], threatened to kill Nevills and place him in "A-wing", and then "began twisting his arm, trying to break it." (ECF No. 1, PageID.3.)

An Order of Reference was entered on August 1, 2018, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 6.) On March 1, 2019, Hildreth filed a motion for summary judgment, arguing that Nevills fails to satisfy the requirements of an Eighth Amendment claim and that Eleventh Amendment immunity bars Nevills' claim because Hildreth "acted reasonably without violating Nevills' clearly established constitutional rights." (ECF No. 12.) Nevills filed a response on December 6, 2019, and Hildreth filed a reply on December 19,

---

[1] Nevills contends that "cho" means "child molester." (ECF No. 26, PageID.142.)

2019.  (ECF Nos. 26, 27.)  Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody, and the Court declines to hold one here.  *See* E.D. Mich. L.R. 7.1(f).

### A.      Background

Nevills is a prisoner currently confined at MDOC Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.  (ECF No. 1, PageID.1.)  He brings a civil rights action under 42 U.S.C. § 1983 against Hildreth, a corrections officer at Macomb Correctional Facility ("MRF") regarding an incident that occurred when Nevills was at MRF.  (*Id.*; ECF No. 12, PageID.41.) Nevills' application to proceed without prepayment of fees was granted pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(a)(1).  (ECF No. 3, PageID.21.)

Nevills alleges that on February 13, 2018, Hildreth "physically brutally assaulted" him. (ECF. No 1, PageID.3.)  Nevills asserts that Hildreth became threatening towards him calling him a "cho" and saying "you raped her" and "I'm going to kill you.  You're going on A-wing." (*Id.*) Nevills alleges that during this encounter Hildreth twisted his arm, trying to break it, and that he was not resisting Hildreth.  (*Id.*)  Nevills filed a grievance against Hildreth regarding this incident. (*See* ECF No. 1, PageID.6–11.)  Nevills exhausted the MDOC's three-step grievance process, with the MDOC denying the grievance at each step.  (See *id.*; ECF No. 12, PageID.42.)  Nevills is now suing Hildreth in his official and individual capacities for damages, claiming that Hildreth violated his rights under the Eighth Amendment.  (*Id.* at PageID.1, 3.)

In his motion for summary judgment, Hildreth states that an investigation into Nevills' allegations took place, including a review of camera footage of the incident.  (*Id.* at PageID.42.) Although Hildreth's brief purports to quote from the investigation report, claiming that it found "insufficient evidence of work rule violations relating to physical contact, use of force, and humane

treatment of individuals" (*id*. at PageID.42.), Hildreth did not attach the investigation report to his motion, and did not supply any video evidence to the Court.

Hildreth's motion for summary judgment is also supported by his own affidavit, as well as affidavits from corrections officer Andrew Shannon ("Shannon") and Sergeant Darnell Mandy ("Mandy") that essentially corroborate Hildreth's version of the events.  (ECF Nos. 12-2, 12-4, 13-1.)  In his affidavit, Hildreth states that he was monitoring the medication line when he said out loud that it "sounded like Chewy [*i.e.*, Chewbacca the Wookiee from the *Star Wars* saga] [was] in the unit." (ECF No. 12-2, PageID.58.)  His comment was "a general comment because there was an unusual noise in the area [he] was monitoring." (*Id*.)  Hildreth asserts that Nevills and another prisoner were "riling each other up, becoming disruptive to the unit," so he ordered Nevills to go to the front of the line to get his medication, which Nevills refused to do.  (*Id*.)  Hildreth says that Nevills also refused to obey a second order to go to his cell.  (*Id*.)  At this point, Hildreth states that he "moved toward Nevills to handcuff him," and "Nevills began yelling 'Sarge' presumably for Sergeant Darnell Mandy."  (*Id*.)  Then, "in an attempt to gain control over the situation, [Hildreth] began to place Nevills against the wall." (*Id*.)  Shannon assisted Hildreth by placing Nevills in handcuffs and escorting him to the A-wing shower area.  (*Id*.)  Hildreth argues that he did not maliciously or sadistically inflict pain on Nevills, and the force applied "was only that amount necessary to ensure the safety of staff and others and to bring control to an escalating disturbance." (*Id*. at PageID.58–59.)

Officer Shannon states in his affidavit that he "saw Hildreth attempting to restrain prisoner Nevills and [] assisted Hildreth by placing handcuffs on Nevills and escorting Nevills to the A-wing shower area." (ECF No. 13-1, PageID.74.)  Sergeant Mandy states in his affidavit that he "heard Nevills respond to some type of comment by Hildreth about 'Chewbacca;' I do not know

3

if Hildreth's comment was directed to Nevills or to any other prisoner."  (ECF No. 12-4, PageID.64.)  Mandy states there was "some back and forth" between Hildreth and Nevills, when Hildreth told Nevills "to turn around and cuff up." (*Id.*)  Mandy saw Shannon assist Hildreth. (*Id.*)  Both Shannon and Mandy assert that they did not see Hildreth use "excessive force" or "maliciously or sadistically inflict pain towards Nevills," and that instead, "[t]he force that was applied was only that amount necessary to ensure the safety of staff and others and to bring control to an escalating disturbance."[2] (*Id.*; ECF No. 13-1, PageID.74.)

In support of his response to Hildreth's summary judgment motion, Nevills submitted an affidavit in which he avers that on February 13, 2018, Officer Hildreth "called me a 'cho' which means child molester[,] and called me a rapist."  (ECF No. 26, PageID.141-42.)  Nevills then told Hildreth that he "was going to file a grievance" regarding being called a "cho" and told Hildreth that he could not speak to him like that.  (*See id*.)  According to Nevills, Hildreth then said, "I'm going to kill you."  (*See id*.)  Nevills avers that after he called out for Sergeant Mandy to help, Hildreth "forcefully grabbed and twisted [his] arm and threw [him] into the wall." (*See id*.)  Nevills states that "[i]t felt like something in my arm tore."  (*See id*.)  He was then put in a locked shower

---

[2] Although Mandy and Shannon purport to offer fact testimony, as opposed to expert testimony, the principle that an expert witness may not opine on a legal issue, such as whether the force used by a defendant was "excessive" or "malicious and sadistic", *DeMerrell v. City of Cheboygan*, 206 F. App'x. 418, 426 (6th Cir. 2006), likely applies to them as well.  *See Norman v. City of Lorain, Ohio*, No. 1:04 CV 913, 2006 WL 5249724, at *4 (N.D. Ohio Nov. 16, 2006) ("Generally, the court would not allow lay witnesses to provide an opinion specifically as to whether Officer Lachner acted reasonably, unreasonably, or used excessive force.").  Ultimately, because of the Court's disposition of Hildreth's motion, it need not decide which, if any, of Mandy's and Shannon's statements may be considered at the summary judgment stage.  However, Hildreth should bear this evidentiary issue in mind if he elects to file a renewed summary judgment motion; fact witnesses should describe the *actions* they observed, not provide *characterizations* that amount to legal opinions.  *See also Henry v. City of Flint*, No. 17-CV-11061, 2019 WL 2207669, at *8 (E.D. Mich. Apr. 19, 2019), report and recommendation adopted, No. 17-CV-11061, 2019 WL 2211847 (E.D. Mich. May 21, 2019).

area.  (*See id*.)  Nevills states he did not resist Officer Hildreth's attempt to handcuff him at any time during the encounter.  (*See id*.)  Nevills also attached a health care request form to his response showing that he made a health care request regarding his arm no later than two days after the incident.  (*See* EDF No. 26, PageID.148.)  However, Nevills did not present any of his own medical records (or other evidence) showing the extent of his injuries and/or any treatment he received.

### B.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)(internal quotations omitted).

At the summary judgment stage, the ultimate question is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).  "[T]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  Put another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

###### C.    Analysis

Hildreth argues that he is entitled to summary judgment on three separate grounds: (1) that he is entitled to Eleventh Amendment sovereign immunity with respect to Nevills' claim against him in his official capacity; (2) that he is entitled to qualified immunity because Nevills failed to allege or show that Hildreth acted unreasonably or violated any constitutional right; and (3) that Nevills failed to raise a material question of fact as to the substantive elements of his Eighth Amendment excessive force claim.  (ECF No. 12.)

> *i.  Hildreth is Entitled to Summary Judgment as to Nevills' Official Capacity Claim*

The United States Supreme Court has long held that the Eleventh Amendment bars suit against a state in federal court absent its consent.  *Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *see Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996) (reaffirming *Hans*).  This immunity is extended to state officials sued in their official capacity for monetary damages since the action, in essence, is one for recovery of money from the state.  *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  Additionally, § 1983 does not abrogate Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 343 (1979).  Thus, a § 1983 claim for monetary relief against a state official sued in his official capacity is barred by the Eleventh Amendment.  *Edelman*, 415 U.S. at 663.  Eleventh

Amendment immunity clearly applies to claims for monetary damages against MDOC employees in their official capacities.  As the Honorable Robert H. Cleland recently explained:

> Plaintiff's complaint against certain defendants must be dismissed, in part, based on immunity.  Plaintiff sues the MDOC and several MDOC defendants in their official capacities for monetary damages.  The Eleventh Amendment, however, bars civil rights actions against a state and its agencies and departments unless the state has waived its immunity and consented to suit or Congress has abrogated that immunity.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  "The state of Michigan . . . has not consented to being sued in civil rights actions in the federal courts," *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)), and Congress did not abrogate state sovereign immunity when it passed § 1983.  *Chaz Const., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005).  Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief against a state and its agencies."  *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)).  Additionally, Eleventh Amendment immunity applies to state employees who are sued in their official capacities.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)).  Thus, Plaintiff's claims for monetary damages against the MDOC and MDOC employees sued in their official capacities must be dismissed because these defendants are entitled to Eleventh Amendment immunity.  *See Johnson*, 357 F.3d at 545.

*J.R. Pettway v. Michigan Dept. of Corrections*, No. 19-11201, 2019 WL 2369281, at *2 (E.D. Mich. June 5, 2019).  *See also McCoy v. Michigan*, 369 F.App'x. 646, 653–54 (6th Cir. 2010).

For these reasons, Hildreth is entitled to summary judgment as to Nevills' claims against him in his official capacities for monetary relief.

### ii.  Excessive Force

In *Rafferty v. Trumbull County, Ohio*, 915 F.3d 1087, 1093-94 (6th Cir. 2019), the Sixth Circuit recently explained the standards applicable to a prisoner's Eighth Amendment claim that a prison guard subjected him to excessive force.  The Sixth Circuit noted that such a prisoner must make "a heightened showing that the prison official acted 'maliciously and sadistically for the very purpose of causing harm'":

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (quoting *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) ).  The Supreme Court has explained that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).  However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal citation omitted).

"To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)).

"The objective component requires the pain inflicted to be 'sufficiently serious.'" *Curtin*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).  As the Supreme Court has stated, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (quoting *Hudson*, 503 U.S. at 9, 112 S.Ct. 995). Rather, the Eighth Amendment protects prisoners only from that conduct which is "repugnant to the conscience of mankind." *Id.* at 38, 130 S.Ct. 1175 (quoting *Hudson*, 503 U.S. at 9–10, 112 S.Ct. 995).  The objective component of the Eighth Amendment "is a 'contextual' inquiry that is 'responsive to contemporary standards of decency.'" *Curtin*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 8–9, 112 S.Ct. 995). This Court has held that the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 345–46, 101 S.Ct. 2392).  Thus, courts should interpret the Eighth Amendment "in a flexible and dynamic manner." *Id.* (quoting *Rhodes*, 452 U.S. at 345, 101 S.Ct. 2392).

The subjective component requires that the prison official act with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Wilson*, 501 U.S. at 297, 111 S.Ct. 2321).  This "requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* (quoting *Wilson*, 501 U.S. at 297, 111 S.Ct. 2321).  In some instances, the subjective prong of an Eighth Amendment claim is

satisfied by a showing of deliberate indifference, such as in cases concerning medical care, conditions of confinement, or abuse perpetrated by an inmate against another inmate. *See e.g., Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017) (medical care); *Wilson*, 501 U.S. at 303, 111 S.Ct. 2321 and *Villegas*, 709 F.3d at 571 (conditions of confinement); *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 and *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (abuse perpetrated by an inmate against another inmate). ***In other contexts, such as when a prisoner alleges excessive force, the subjective component requires a heightened showing that the prison official acted "maliciously and sadistically for the very purpose of causing harm."*** *Hudson*, 503 U.S. at 6, 112 S.Ct. 995 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Hudson*, 503 U.S. at 9, 112 S.Ct. 995).

*Rafferty*, 915 F.3d at 1093-94 (emphasis added).

The Supreme Court has clarified that it is unnecessary for an inmate to prove that he suffered from any significant injury requiring medical attention in order to support an Eighth Amendment claim involving excessive force. *See Wilkins*, 559 U.S. 37. Indeed, the "central issue under the Eighth Amendment remains the amount of force used, not the amount of injury. Nevertheless, in *Wilkins* [], the Supreme Court held that an examination of a plaintiff's injuries remains meaningful." *Brooks v. Dillow*, No. 1:15-CV-812, 2016 WL 6493419, at *10 (S.D. Ohio Nov. 2, 2016), report and recommendation adopted, No. 1:15-CV-812, 2016 WL 7034241 (S.D. Ohio Dec. 2, 2016).

This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a " ' push or shove' " that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Wilkins*, 559 U.S. at 37–38 (internal citations omitted).

On the present record, the Court is unable to conclude that Hildreth is entitled to summary judgment on Nevills' excessive force claim.[3]  Many of the factual averments supporting Hildreth's summary judgment motion are, at least based on the present record, quite problematic.  First, Hildreth writes, "A thorough investigation into Nevills' allegations against Hildreth took place, which included obtaining and reviewing institutional camera footage . . . and interviewing a number of individuals. . . . The Investigator [] concluded, in part, that Nevills 'was not complying with the orders being given to him' and that although '[p]hysical contact and force was used' it 'does not appear to be excessive' given the camera footage and witness's [sic] responses."  (ECF No. 12, PageID.42.)  Yet, while Hildreth purports to quote from the "Investigator's" report, he did not provide a copy to the Court.  Nor has the video been provided to the Court.

Second, as noted above, some of the main "evidence" Hildreth relies on regarding the extent of force he used are actually impermissible legal opinions.  *See supra* at 4, n.2.

Finally, Hildreth relies on his averment (and the similar ones from his colleagues, Mandy and Shannon) that "Nevills never indicated that he was hurt or injured, either during or after the incident."  (ECF No. 12-2, PageID.59; *see also* ECF No. 12-4, PageID.64; ECF No. 13-1, PageID.74.)  Yet, Nevills attached to his response brief a copy of a Health Care Request he sent within two days of the incident, in which he wrote, "My arm was attack [sic] by C.O. Hildreth on

---

[3] The only exception is that to the extent Nevills purports to assert an Eighth Amendment claim based on alleged verbal harassment by Hildreth, summary judgment is appropriate.  The law is clear that such allegations do not rise to the level of a constitutional violation.  *See Emmons v. McLaughlin*, 874 F.2d 351, 353–354 (6th Cir.1989).

2/13/18. . . . I'm in a lot of pain still . . . I need my arm look[ed] at."  (ECF No. 26, PageID.148.)[4]

While this document is not necessarily inconsistent with the averments of Hildreth, Mandy, and

Shannon,[5] it at least leaves open the important questions of whether Nevills actually was seen by

Health Care following his request, and if so, what findings were made there.  This is critical

because, as noted above, "the extent of injury is one factor to be considered in determining whether

the assertion of force "'could plausibly have been thought necessary' in a particular situation."

*Wilkins*, 559 U.S. at 37 (internal citations omitted).  Thus, before the Court is called upon to assess

the ultimate issue in this case – whether the force used by Hildreth was excessive – it should at

least be advised, through proper evidence, as to whether Nevills actually received treatment, and,

if so, what the relevant medical records reflect.

Hildreth seems to recognize the importance of this issue, noting, in his reply brief, "the

absence of evidence regarding any injury is significant in considering whether the amount of force

was used in good faith . . ."  (ECF No. 27, PageId.154.)  The Court has considered whether, based

on Hildreth's arguments and evidence, it was incumbent upon Nevills to present his own medical

records.  This is a close call, but ultimately, the Court answers that question in the negative.

Hildreth only asserted that Nevills never indicated he had been injured.  Nevills effectively

---

[4] The precise timing of Nevills' Health Care Request is not entirely clear.  The date of Nevills' request is illegible, but a nurse responded on February 15, 2018, and the request bears a timestamp of 10:46 p.m. on that same date.

[5] For instance, Nevills could have sought treatment without the affiants being aware of that fact. At the same time, Hildreth's counsel should be aware of whether Nevills actually obtained treatment, and if so, what those records say regarding the incident and any injuries Nevills may have suffered.  However, perhaps not surprisingly given the odd timing of Hildreth's summary judgment motion – it was filed just three weeks after discovery commenced – Hildreth provides no details whatsoever as to either of those specific issues.  Indeed, from an evidentiary perspective, Hildreth's motion rests entirely on the three affidavits referenced above; he provided no documents (such as medical records (or an affidavit from an appropriate custodian that none exist), or the investigation report referenced herein), no answers to requests for admission, no deposition testimony, and no interrogatory answers.

rebutted that assertion by providing his Health Care Request.  Hildreth never alleged (let alone established) that Nevills did not actually receive treatment or that Nevills' medical records belie a claim of excessive force.  Thus, Nevills, having rebutted the argument Hildreth did make, might not have felt obligated to address those specific issues, too.

In the end, neither party presented sufficient evidence regarding the most central issue in this case, and the evidence supporting Hildreth's instant motion is plagued by the shortcomings identified above.  The Court therefore finds that, as to Nevills' excessive force claim, it would be inappropriate to grant Hildreth's instant motion on the present record.  However, because these issues may ultimately weigh in favor of granting summary judgment in Hildreth's favor, his instant motion should be denied without prejudice, and he should be given 45 days to file a renewed summary judgment motion supported by appropriate evidence.

### D.      Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Hildreth's motion for summary judgment **(ECF No. 12)** be **GRANTED IN PART AND DENIED IN PART**; the motion should be **GRANTED** as to Nevills' official capacity claim and any claim based on Hildreth's alleged verbal harassment, but **DENIED WITHOUT PREJUDICE** in all other respects.  Further, Hildreth should be given 45 days to file a renewed summary judgment motion.

Dated: December 23, 2019                          s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                   United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 23, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS